UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
STEVE SKERTIC, *et al.*, :
: CASE NO. 1:11-CV-0963-JG
Petitioners, :
:
vs. : OPINION & ORDER
: [Resolving Doc. Nos. 1, 28, 29]
NATIONAL CREDIT UNION :
ADMIN. BOARD, *et al.,* :
:
Respondents. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Petitioners Steve and Marija Skertic ask this Court to review the National Credit Union Administration Board's decision regarding the amount of insurance coverage on their accounts at the St. Paul Croatian Federal Credit Union.[1] The NCUA liquidated the Credit Union after it became insolvent.[2] The NCUA then determined that the Skertic's were entitled to $553,000 of insurance coverage.[3] The Skertics appealed that decision because they say that they are entitled to $717,000 of coverage.[4] The Board denied their appeal.[5] Now, the Skertic's ask this Court to review the Board's decision.[6] For the reasons below, the Court **GRANTS** summary judgment to the Board.

**I. Background**

In 2010, Steve and Marija Skertic held approximately $718,000 in three joint accounts at the

---

[1] Doc. 1.
[2] Doc. 27 at 1.
[3] Doc. 21 at 14.
[4] Doc. 21 at 13.
[5] Doc. 21 at 17.
[6] Doc. 1.

Case No. 1:11-CV-0963-JG
Gwin, J.

St. Paul Croatian Federal Credit Union in Eastlake, Ohio.[7] They invested their money as follows: (1) $391,558.17 in account 69600; (2) $154,748.09 in account 69601; and (3) $172,023.84 in account 69602.[8] Because the Skertics' had limited mobility, Josip Gosevic, a Credit Union employee and friend of the Skertics, delivered them $800 from their accounts each month.[9]

In early 2010, NCUA regulators discovered fraud and embezzlement at the Credit Union.[10] In response to those losses, the NCUA placed the Credit Union under conservatorship.[11] Anticipating liquidation, Credit Union employees and NCUA agents scrambled to audit and restructure accounts to maximize the account holders' insurance coverage.[12]

Josip Gosevic was part of that effort.[13] He calculated that the Skertic's accounts totaled roughly $717,000.[14] But, Gosevic knew that the National Credit Union Act limited insurance coverage for co-owners in joint accounts.[15] Thus, he spoke with Andy Baumann, the NCUA site manager, about structuring the Skertic's accounts to maximize their insurance coverage.[16] Baumann told Gosevic that "an account with four owners would be insured up to $1,000,000."[17] Gosevic then helped the Skertics add their relatives Martin and Ljubica Prcela as co-owners on their accounts.[18]

---

[7] Doc. 27 at 2.
[8] Gosevic calculated the Skertic's total account holdings at approximately $1,010,000. Doc. 1-2 at 1. That figure included Steve Skertic's IRA account, which totaled $293,000. The IRA was separately insured and is not at issue in this action. Doc. 1-2 at 1.
[9] Doc. 21 at 100.
[10] Doc. 21 at 31.
[11] Doc. 21 at 31.
[12] Doc. 29 at 2-3.
[13] Doc. 1-2.
[14] Doc. 1-2 at 1.
[15] Doc. 1-2 at 1.
[16] Doc. 1-2 at 1.
[17] Doc. 21 at 104.
[18] Doc. 27 at 2.

Case No. 1:11-CV-0963-JG
Gwin, J.

On April 30, 2010, the NCUA closed the Credit Union and began to liquidate its holdings.[19] The NCUA determined that the Skertics accounts were insured up to approximately $553,000.[20] It limited the insurance coverage because the Prcelas had their own accounts at the Credit Union, and thus, the insurance cap also applied to the Prcelas total holdings as co-owners on joint accounts.[21] As a result, the Prcelas' co-ownership of the Skertic's accounts did not result in full insurance coverage.[22]

Instead, the NCUA found that Gosevic's restructuring had the following mixed effects: (1) the Prcelas could claim insurance money on behalf of the Skertics because they were co-owners on the Skertic's accounts; (2) after claiming approximately $305,000 in coverage on their own accounts, the Prcelas could claim only approximately $195,000 for the Skertics; and (3) the Skertics could personally claim approximately $358,000.[23] Adding the $358,000 and $195,000 figures, the NCUA calculated a total insurance recovery of approximately $553,000 on the Skertic's accounts valued at $717,000.[24] Thus, the Credit Union's liquidation caused the Skertics to lose approximately $164,000.

The NCUA made insurance payments on the Skertic's accounts totaling approximately $553,000.[25] In addition, the NCUA gave the Skertics a certificate acknowledging their $164,000 loss.[26] On August 6, 2010, the Skertics appealed the NCUA's insurance coverage determination

---

[19] Doc. 29 at 2.
[20] Doc. 21 at 14.
[21] Doc. 21 at 7.
[22] Doc. 21 at 8.
[23] Doc. 21 at 24-25.
[24] Doc. 27 at 2-3.
[25] Doc. 21 at 253-62.
[26] Doc. 1-1 at 3.

Case No. 1:11-CV-0963-JG
Gwin, J.

to the Board.[27] The Board denied their appeal.[28] On May 13, 2011, the Skertics filed a petition asking this Court to review the Board's decision.[29]

## II. Legal Standard

Courts review NCUA Board final determinations of insurance coverage using the standards of the Administrative Procedures Act ("APA").[30] Under the APA, courts may set a ruling aside only if it finds that the Board's action is unsupported by substantial evidence or if it is arbitrary, capricious, an abuse of discretion, or contrary to law.[31]

The § 706 standard is the least demanding form of judicial review.[32] An outcome is not arbitrary or capricious "when it is possible to offer a reasoned explanation [for it], based on the evidence."[33] To satisfy the substantial evidence standard, the Board's decisions must be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[34]

In an appeal from final agency action, summary judgment is appropriate based on the administrative record when the nonmoving party cannot show a genuine dispute of material fact and the standards of § 706 are met.[35] If, on the other hand, factual uncertainty precludes such judgment,

---

[27] Doc. 21 at 33.
[28] Doc. 1-1.
[29] Doc. 1.
[30] 12 U.S.C. § 1787(d)(3); 5 U.S.C. § 706; *Brisco v. NCUA*, 130 F. App'x 266, 266 (10th Cir. 2005). *See also Goldin v. Fed. Deposit Ins. Corp.*, 985 F.2d 261, 264 (6th Cir. 1993) (holding that the § 706 standard applies to review of Federal Deposit Insurance Corporation insurance coverage determinations).
[31] 5 U.S.C. § 706(2)(A); *Sasse v. U.S. Dep't of Labor*, 409 F.3d 773, 778 (6th Cir. 2005).
[32] *Davis v. Ky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989).
[33] *Id.* (internal quotations and citation omitted).
[34] *ITT Auto v. NLRB*, 188 F.3d 375, 384 (6th Cir. 1999).
[35] *Goldin*, 985 F.2d at 262.

Case No. 1:11-CV-0963-JG
Gwin, J.

the proper course is to remand the matter to the agency rather than conduct additional fact-finding.[36]

### III. Law & Analysis

The Skertics say that the NCUA Board's decision: (1) was arbitrary, capricious, and unsupported by substantial evidence;[37] (2) was contrary to law because the Credit Union failed to provide notice of insurance coverage to the Skertics;[38] and (3) deprived the Skertics of due process of law and equal protection under the Fifth Amendment of the United States Constitution[39].

*A. APA Claims*

The Court finds that the Board's determination was supported by substantial evidence, and was not arbitrary, capricious, an abuse of discretion, or contrary to law because the Board relied on the appropriate records and complied with the applicable regulations governing insurance coverage.

First, the Board's decision is supported by substantial evidence because it relied on the Credit Union's records at the time of the liquidation. When calculating deposit insurance coverage, regulators may treat institutional records at the time of liquidation as conclusive.[40] In the similar context of bank liquidation and FDIC insurance, federal courts of appeals have recognized the "well-grounded history of permitting the FDIC to rely exclusively on the books and records of an insolvent institution in . . . making . . . deposit insurance determinations . . . ."[41] Here, the NCUA relied on the Credit Union's final records to determine the Skertic's insurance coverage.[42]

---

[36]*Fla. Power v. Lorion*, 470 U.S. 729, 744 (1985).
[37]Doc. 29 at 5-7.
[38]Doc. 29 at 6.
[39]Doc. 29 at 7-8.
[40]*See* 12 C.F.R. §§ 745.3(a), 745.8(b); *Langley v. Fed. Deposit Ins. Corp.*, 484 U.S. 86, 91-92 (1987).
[41]*Raine v. Reed*, 14 F.3d 280, 283 (5th Cir. 1994). *See also Villafane-Neriz v. F.D.I.C.*, 75 F.3d 727, 732 (1st Cir. 1996).
[42]Doc. 27 at 3.

Case No. 1:11-CV-0963-JG
Gwin, J.

Moreover, the Skertics stipulated to the accuracy of the account balances used by the NCUA.[43]
Thus, the Board's decision is supported by substantial evidence.

Second, the Board's decision was not arbitrary, capricious, or an abuse of discretion because the NCUA calculated the insurance coverage correctly under the applicable regulation. Under 12 C.F.R. § 745.8, the NCUA calculates insurance coverage for each co-owner of a joint account as follows:

> The interests of each co-owner in all qualifying joint accounts shall be added together and the total shall be insured up to [$250,000]. (Example: "A & B" have a qualifying joint account with a balance of $150,000; "A & C" have a qualifying joint account with a balance of $200,000; and "A & B & C" have a qualifying joint account with a balance of $375,000. A's combined ownership interest in all qualifying joint accounts would be $300,000 ($75,000 plus $100,000 plus $125,000); therefore, A's interest would be insured in the amount of $250,000 and uninsured in the amount of $50,000. B's combined ownership interest in all qualifying joint accounts would be $200,000 ($75,000 plus $125,000); therefore, B's interest would be fully insured. C's combined ownership interest in all qualifying joint accounts would be $225,000 ($100,000 plus $125,000); therefore, C's interest would be fully insured.[44]

Here, the Skertics split the ownership of their three accounts among four people because they added Martin and Ljubica Prcela as co-owners on their accounts. Thus, for (1) Account 69600 with a liquidation balance of $391,558.17, each 25% interest totaled $97,889.54; (2) Account 69601 with a liquidation balance of $154,748.09, each 25% interest totaled $38,687.02; and (3) Account 69602 with a liquidation balance of $172,023.84, each 25% interest totaled $43,005.96.

Martin and Ljubica Prcela, however, held their own joint account at the Credit Union with a liquidation balance of $305,321.06.[45] Their 50% interests in their own joint account were each

---

[43] Doc. 27 at 2 ("Plaintiffs had the following amounts in their joint accounts: $391,558.17 in account 69600; $154,748.09 in account 69601; and $172,023.84 in account 69602.").
[44] 12 C.F.R. § 745.8.
[45] Doc. 21 at 24.

Case No. 1:11-CV-0963-JG
Gwin, J.

worth $152,660.53. Thus, (1) Steve Skertic had an interest in all the joint accounts totaling $179,582.53 ($97,889 plus $38,687.02 plus $43,005.96); (2) Marija Skertic had an interest in all the joint accounts totaling $179,582.53 ($97,889 plus $38,687.02 plus $43,005.96); (3) Martin Prcela had an interest in all the joint accounts totaling $332,243.06 ($97,889 plus $38,687.02 plus $43,005.96 plus $152,660.53); and (4) Ljubica Prcela had an interest in all the joint accounts totaling $332,243.06 ($97,889 plus $38,687.02 plus $43,005.96 plus $152,660.53).

Consequently, Steve Skertic's $179,582.53 interest is fully insured because it fell below the $250,000 cap. Similarly, Marija Skertic's $179,582.53 interest is fully insured because it fell below the $250,000 cap. But Martin and Ljubica Prcela each had a $332,243.06 interest in all the joint accounts. Thus, each of the Prcela's interests exceeds the $250,000 insurance cap by $82,243.05 ($250,000 minus $332,243.06). As a result, after fully applying the insurance coverage to the Prcela's individual interests in their own joint account, the Prcela's each have $97,339.47 in insurance coverage to apply to their interests in the accounts they co-owned with the Skertics ($250,000 minus $152,660.53). Adding it all together, the § 745.8 formula yields insurance coverage on the Skertic's accounts totaling approximately $553,844 (Steve Skertic's $179,582.82 plus Marija Skertic's $179,582.82 plus Martin Prcela's $97,339.47 plus Ljubica Prcela's $97,339.47).

The NCUA also determined that the Skertic's were entitled to $553,844 in insurance coverage,[46] and it paid the Skertics that amount.[47] Thus, because the NCUA calculated the insurance coverage correctly under the applicable regulation, the Board's decision to affirm was not

---

[46] Doc. 27 at 2-3.
[47] Doc. 21 at 253-62.

-7-

Case No. 1:11-CV-0963-JG
Gwin, J.

arbitrary, capricious, or an abuse of its discretion.

Third, the Skertics have failed to raise a genuine issue of material fact showing that the Board's decision is contrary to law. The Skertics say that the Board's decision is unlawful because the Board did not consider the Credit Union's purported violation of the notice requirement contained in 12 C.F.R. § 745.13.[48] Under § 745.13, "[e]ach insured credit union shall provide notice to its members concerning NCUA insurance coverage of member accounts."[49] The Skertics say that the NCUA and the Credit Union failed to comply with this provision during the Credit Union's conservatorship.[50]

But full compliance with § 745.13 "may be accomplished by placing either a copy of [certain] rules . . . or of [a certain] NCUA brochure . . . in each branch office and main office of the credit union."[51] The Skertics do not show that the Credit Union did not place NCUA brochures in its offices, nor have the Skertics showed evidence that they requested these materials. Moreover, the plain language of § 745.13 cannot be read to require credit unions to give account holders individualized determinations of their insurance coverage. Thus, because the Skertics have failed to show evidence that the Credit Union violated § 745.13, the Skertics have failed to show a genuine issue of material fact exists that the Board's decision was unlawful.

B. Fifth Amendment Claims

The Court finds that the Skertic's Fifth Amendment claims are unreviewable in this action because the APA limits the scope of this Court's review. The Skertics say that the Board's decision

---

[48] Doc. 29 at 6.
[49] 12 C.F.R. § 745.13.
[50] Doc. 29 at 6.
[51] 12 C.F.R. § 745.13.

-8-

Case No. 1:11-CV-0963-JG
Gwin, J.

"denies the Skertics due process and equal protection of the law."[52] But the Skertics failed to cite to any legal authority that gives the Court the power to hear those claims in the context of its administrative review. Under 12 C.F.R. § 745.203, final determinations made by the Board are reviewable "in accordance with the provisions of [the APA] by the United States district court for the Federal judicial district where the credit union's principal place of business is located."[53] As a result, under the APA this Court can set aside the Board's decision only if it finds the Board's action is unsupported by substantial evidence or if it is arbitrary, capricious, an abuse of discretion, or contrary to law.[54] Thus, because the Skertics Fifth Amendment claims fall outside the scope of the review authorized by the APA, the Court will not review these claims.

### IV. Conclusion

For the reasons above, the Court **GRANTS** summary judgment to the Government.

IT IS SO ORDERED.

Dated: June 4, 2013         s/     *James S. Gwin*
                            JAMES S. GWIN
                            UNITED STATES DISTRICT JUDGE

---

[52] Doc. 29 at 7.
[53] 12 C.F.R. § 745.203.
[54] 5 U.S.C. § 706(2)(A); *Sasse*, 409 F.3d at 778.